UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

BERNARDO VALENTINI and WINDSOR     :
INTERNATIONAL CO., f/k/a WINDSOR    :
INTERNATIONAL INVESTMENT CORP.,    :
                                           :
                   Plaintiffs,     : Civil Action Docket
                                         : No. 11-CV-1355 (JMF)
                   v.               :
                                           :
CITIGROUP, INC., CITIGROUP GLOBAL   :
MARKETS, INC., CITICORP FINANCIAL   :
SERVICES CORPORATION, k/n/a CITI     :
INTERNATIONAL FINANCIAL SERVICES, LLC, :
CITIBANK, N.A., and CITI PRIVATE BANK,  :
                                         :
                  Defendants.    :
                                         :
                                         :

------------------------------------------------------------------ x

### MEMORANDUM OF LAW IN SUPPORT
### OF DEFENDANTS' MOTION FOR SANCTIONS

FRESHFIELDS BRUCKHAUS DERINGER US LLP

Marshall H. Fishman
Dana L. Post
Samuel J. Rubin
601 Lexington Avenue
New York, New York 10022

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..............................................................................................................2

    A. THE COMPLAINT ...................................................................................................2

    B. DISCOVERY BACKGROUND ..................................................................................4

        1. Defendants' December 19, 2012 Document Requests ...............................4

        2. Plaintiffs Were Obligated and Agreed to Search for and Produce Hard Copy
           and Electronically Stored Information From Windsor and Valentini .........................5

        3. The June 13, 2013 Conference and Plaintiffs' Default Under the April 30
           Order   ........................................................................................................6

        4. Valentini's Document Productions Following the June 13 Conference.......................7

ARGUMENT ....................................................................................................................8

    I.   SANCTIONS UNDER RULE 37(B) ARE WARRANTED AGAINST WINDSOR .........8

        A. DISMISSAL OF WINDSOR'S CLAIMS IS WARRANTED .....................................9

        B. IN THE EVENT WINDSOR'S CLAIMS ARE NOT DISMISSED, AN ORDER SHOULD BE
           ISSUED ESTABLISHING CERTAIN FACTS .................................................12

    II.  SANCTIONS AGAINST VALENTINI UNDER RULE 37(b) ARE
         WARRANTED .....................................................................................15

    III. COSTS AND FEES ARE WARRANTED .................................................................16

    IV. PLAINTIFFS SHOULD BE REQUIRED TO POST SECURITY PURSUANT
        TO LOCAL RULE 54.2 ....................................................................................18

CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agiwal v. Mid Island Mortg. Corp.*,
    555 F.3d 298 (2d Cir. 2009) ............................................................10

*Beautiful Jewellers Private Ltd. v. Tiffany & Co.*,
    No. 06-cv-3085 (KMW)(FM), 2008 WL 2876508 (S.D.N.Y. July 21, 2008) .......................20

*Bressler v. Lievman*,
    No. 96-cv-9310 (LAP), 1997 WL 466553 (S.D.N.Y. Aug. 14, 1997)..................................19

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ...........................................................................9

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
    602 F.2d 1062 (2d Cir. 1979)......................................................12

*Enmon v. Prospect Capital Corp.*,
    675 F.3d 138 (2d Cir. 2012) ........................................................18

*Gordon v. Kaleida Health*,
    No. No. 08–CV–378S(F), 2013 WL 2250431 (W.D.N.Y. May 21, 2013) ............................17

*Herbstein v. Bruetman*,
    141 F.R.D. 246 (S.D.N.Y. 1992) .................................................19

*Indep. Investor Protective League v. Touche Ross & Co.*,
    607 F.2d 530 (2d Cir. 1978) ........................................................10

*Int'l Mining Co. v. Allen & Co.*,
    567 F. Supp. 777 (S.D.N.Y. 1983)..............................................10

*Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*,
    No. 99 Civ. 0275(RWS), 2004 WL 1811427 (S.D.N.Y. Aug. 12, 2004) .............................18

*Kensington Int'l Ltd. v. Republic of Congo*,
    No. 03 Civ. 4578 (LAP), 2005 WL 646086 (S.D.N.Y. Mar. 21, 2005)................................19

*Man Wei Shiu v. New Peking Taste Inc.*,
    No. 11–CV–1175 (NGG)(RLM), 2013 WL 2351370 (E.D.N.Y. May 28, 2013) ................17

*Montblanc-Simplo GmbH v. Colibri Corp.*,
    692 F. Supp. 2d 245 (E.D.N.Y. 2010)..........................................10

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
    427 U.S. 639 (1976) ...........................................................................9

*Oilex A.G. v. Mitsui & Co.*,
   669 F. Supp. 85 (S.D.N.Y. 1987) ..................................................................................20

*Onyemaobi v. Covenant House*,
   No. 09 Civ. 2434(PAC), 2011 WL 1044490 (S.D.N.Y. Mar. 21, 2011) ..............................15

*PSG Poker, LLC v. DeRosa-Grund*,
   06 Civ. 1104, 2008 WL 190055 (S.D.N.Y. Jan. 22, 2008) ...................................................13

*Rammal v. Timberland Co.*,
   No. 93 Civ. 8936 (LAP), 1995 WL 559394 (S.D.N.Y. Sept. 20, 1995) ..........................12, 15

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002) ...........................................................................................9, 13

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
   464 F. Supp. 2d 206 (S.D.N.Y. 2006) ...............................................................................20

*S. New England Tel. Co. v. Global NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010) .........................................................................................9, 12

*Sea Trade Co. v. FleetBoston Fin. Corp.*,
   03 Civ. 10254(JFK), 2008 WL 161239 (S.D.N.Y. Jan. 15, 2008) .......................................20

*Selletti v. Carey*,
   173 F.R.D 104 (2d Cir. 1999)). ......................................................................................20

*Shcherbakovskiy v. Seitz*,
   450 Fed. App'x 87 (2d Cir. 2011).....................................................................................10

*Short v. Manhattan Apartments, Inc.*,
   286 F.R.D. 248 (S.D.N.Y. 2012) .....................................................................................13

STATUTES

28 U.S.C. § 1927.................................................................................................................9, 18

OTHER AUTHORITIES

Fed. R. Civ. P. 11 ..............................................................................................................2, 3, 5

Fed. R. Civ. P. 16 .......................................................................................................1, 9, 17, 18

Fed. R. Civ. P. 26 ...........................................................................................................*passim*

Fed. R. Civ. P. 37 ...........................................................................................................*passim*

Local Rule 54.2................................................................................................................1, 3, 19, 20

Defendants Citicorp Financial Services ("CFSC"), Citibank, N.A. ("Citibank"), and Citi Private Bank (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their motion pursuant to Rules 37(b)(2), 16(f)(1)(C) and (2), and 26(g)(3) of the Federal Rules of Civil Procedure and Rule 54.2 of the Local Rules of the United States Courts for the Southern District of New York.  Defendants seek to impose sanctions on Plaintiffs Bernardo Valentini ("Valentini") and Windsor International Co. ("Windsor"), and their counsel, for their violations of the Court's April 30 Revised Civil Case Management Plan and Scheduling Order (the "April 30 Order") which ordered the parties to complete outstanding document productions by May 17, 2013 as well as the March 14, 2013 Rule 26(f) Court Ordered Discovery Protocol.  Defendants also seek the imposition of security for costs pursuant to Local Rule 54.2.

## PRELIMINARY STATEMENT

At the June 13, 2013 conference before the Court, Plaintiffs' counsel disclosed for the first time that (i) Plaintiffs failed to comply with the Court's April 30 Order; (ii) Valentini possessed documents that he failed to provide to his counsel and that his counsel had never reviewed; and (iii) Windsor's files had never been retrieved, reviewed or produced to Defendants.  Moreover, to this day Valentini has not produced any electronically stored information such as e-mails or other data requested.  Most critically, counsel's statements demonstrate that the core allegations of the Complaint were made without any review of fundamental documents concerning Plaintiffs' level of sophistication, Plaintiffs' trading in structured notes at other financial institutions that were virtually identical to the notes traded at Citibank, and Plaintiffs' continued investments with the former Citibank bankers at other institutions notwithstanding the Complaint's allegations that these bankers made material misrepresentations that induced them to purchase the structured notes at issue.

Plaintiffs' disclosures at the June 13 conference — representing the wholesale failure by Windsor to retrieve and produce its files and Valentini's violation of the Court's Orders which is continuing — warrant the dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 37(b)(2). The prejudice to Defendants is self evident as Defendants are defending a case without any of Windsor's files and without any of Valentini's electronic data notwithstanding Plaintiffs' prior representations that they were complying with their discovery obligations.[1] The relief requested under these circumstances is warranted and dismissal is endorsed by the Second Circuit pursuant to Rule 37(b) as demonstrated herein. In the event the Court determines not to dismiss the Complaint, the Court should direct that certain facts be established pursuant to Rule 37(b)(2)(A)(i). Plaintiffs also should be required to post security in an amount not less than $750,000 pursuant to Local Rule 54.2.

## BACKGROUND

### A.    THE COMPLAINT

At the outset of the financial crisis in 2007, Windsor (a Bahamian entity), formed by Valentini, borrowed approximately $53 million from Citibank and collateralized its borrowings with highly leveraged, customized structured notes (the "Notes") which Windsor purchased on margin through Citibank.[2] (*See* Compl. ¶¶ 41-42, 53, 56-60, 77, 85). The Notes, which often sought returns in excess of 30 percent were derivative products notionally linked to individual

---

[1]    Plaintiffs and their counsel filed the Complaint and alleged that Plaintiffs were unsophisticated and inexperienced in trading structured notes, and that they were misled by bankers employed by Defendants, Messrs. Milititsky and Ghilardi (Compl. ¶¶ 32, 38, 41, 44, 49-50). These allegations were made without having reviewed Windsor's files and only portions of Valentini's files. It is respectfully submitted that Plaintiffs and their counsel violated Rule 11 of the Federal Rules of Civil Procedure. While Defendants reserve their right to move under Rule 11 in accordance with the procedure outlined therein, the Court also has the inherent power to direct Plaintiffs to show cause why Rule 11 has not been violated. Fed. R. Civ. P. 11(c)(3). It is respectfully requested that the Court direct Plaintiffs to show cause why a violation has not occurred.

[2]    Citibank acted as Plaintiffs' agent in the transactions and followed Plaintiffs' instructions in acquiring the Notes. *See* Declaration of Dana L. Post, dated June 24, 2013 ("Post Decl."), Ex. A at ¶ 1.

stocks.  (*Id.* ¶¶ 11-12, 20-24).  The governing documentation disclosed the risks associated with the Notes including, <u>inter alia</u>, that Windsor could lose all of its principal.  (*Id.* at ¶¶ 14-17).  As the credit crisis unfolded, the Notes declined in value (several of which were linked to the performance of Bear Stearns, AIG, and General Motors), and Windsor's investments were liquidated to satisfy margin calls.  (*Id.* at ¶¶ 23, 64, 73-74, 87).

In 2011, approximately three years after sustaining such losses, Plaintiffs commenced this action for securities and common law fraud, alleging that — contrary to the disclosures contained in the Structured Notes Master Agreement between Windsor and Citibank (*see* Post Decl. ¶ 4, Ex. A), Plaintiffs were orally assured by Citibank bankers Ricardo Ghilardi ("Ghilardi") and Leandro Mililitsky ("Mililitsky") that the Notes "would not lose any money," were "safe," would be "protected from losses," "would be 100% successful" and that there was "no risk of loss."  (Compl. ¶¶ 32, 37, 41).  Plaintiffs further allege that they are unsophisticated investors who were unaware of the risks associated with the Notes disclosed in the governing agreement.  (*See, e.g.*, *id.* at ¶ 65 ("Valentini . . . did not understand how trading on margin worked, nor did he understand the risks associated with trading on margin."); *id.* (Valentini was "unable to fully appreciate" the riskiness of the structured products sold to Windsor); *id.* at ¶ 88 ("[I]nvestors like . . . Windsor" in 2008 "were indeed shocked to learn what they really owned when the stock market crashed.")).[3]  Plaintiffs also claim that they did not receive documentation describing the Notes they purchased from Defendants.  (*Id.* at ¶¶ 36, 45, 50).

The limited discovery Defendants have received demonstrates that Plaintiffs directed the purchase of over thirty substantially similar notes from Pine Bank, as well as substantially

---

[3]     In denying in part Defendants' motion to dismiss the Complaint, Judge Sand specifically relied upon Plaintiffs' alleged "unsophistication and inexperience with complex debt instruments."  Memorandum and Order dated December 26, 2011, at 16.

similar notes from Banco Santander in Brazil and HSBC in Switzerland.[4]  In a lawsuit instituted

by Pine Bank against Valentini in Brazil over Valentini's defaults on his borrowings made to

purchase structured notes during the credit crisis, the Brazilian court specifically found that

Valentini "had an unequivocal notion" of the risks of structured notes.  (Post Decl. ¶ 7 n.2, Ex.

D, at 40).

The Complaint's allegations of lack of sophistication and lack of experience with

structured notes could not have been made in good faith had Plaintiffs' counsel reviewed

Plaintiffs' trading records with other institutions.

## B.   DISCOVERY BACKGROUND

### 1.   DEFENDANTS' DECEMBER 19, 2012 DOCUMENT REQUESTS

Defendants' First Request for Production of Documents from Plaintiffs was served

on December 19, 2012 ("Requests").  (*See* Post Decl. ¶ 6, Ex. C).  The Requests sought

documents concerning Pine Bank's suit against Valentini, Plaintiffs' trading records from Pine

Bank, HSBC and Banco Santander where Plaintiffs directed the trading of structured notes, as

well as documents concerning Valentini's prior investments in high yield Brazilian debt and

securities.  (Post Decl. Ex. C, at Requests Nos. 31, 49-52).  In addition, Defendants requested

documents concerning Valentini's investments, communications, and/or business dealings with

the two former Citibank bankers, Ghilardi and Milititsky, including account opening documents,

trading activity, reports, and account statements.  (*Id.* at Request Nos. 22-23).  The Complaint

alleges that Ghilardi and Milititsky were at the center of the purported fraud against them, yet

---

[4]     In response to Defendants' Interrogatory No. 9 which requested the identification of "any individuals
employed by, or associated with, financial institutions with whom Plaintiffs interacted in connection with their
investments in structured products," Plaintiffs identified individuals at Banco Santander, Pine Bank, and HSBC.
(Post Decl. ¶ 9, Exs. G, H).

Valentini followed Ghilardi to Banco Votorantim and Milititsky to Merrill Lynch where he opened accounts and continued to do business with them.[5]

     **2.**    **PLAINTIFFS WERE OBLIGATED AND AGREED TO SEARCH FOR AND PRODUCE HARD COPY AND ELECTRONICALLY STORED INFORMATION FROM WINDSOR AND VALENTINI**

In Plaintiffs' Responses to Defendants' First Request for the Production of Documents, dated January 21, 2013, Plaintiffs agreed to produce the documents discussed above. (*See* Post Decl. ¶ 8, Ex. E). Plaintiffs further agreed in the Rule 26(f) Stipulation and Proposed Order Regarding Discovery Protocols, which was so ordered on March 14, 2013 (the "Rule 26(f) Stipulation"), to preserve and search the "documents and [electronically stored information]" for Plaintiffs, the Windsor directors Barcot Limited ("Barcot") and Densat Limited ("Densat"), and Valentini's son. (*See* Post Decl. ¶ 8, Ex. F, at § V.A, Exhibit B). These documents were not produced and were again requested by letters to Plaintiffs dated March 20, April 3, and May 2, 2013. (*See* Post Decl. ¶ 10, Ex. I). Plaintiffs never responded to any of Defendants' letters. (Post Decl. ¶ 10).

At the April 29 status conference before the Court, Defendants brought Plaintiffs' discovery deficiencies to the Court's attention which resulted in the April 30 Order mandating that all documents be produced by May 17. (Post Decl. ¶ 11). At the conference, Plaintiffs' counsel agreed to comply with the Court's Order and failed to disclose that they had never obtained Windsor's files or any electronic data. (*Id.*). During this entire timeframe, Plaintiffs continued to lead Defendants to believe that Windsor's documents were searched and would be produced and that Plaintiffs would be producing their electronically stored information as well.

---

[5]    Again, under Rule 11, Plaintiffs could not have made the allegations concerning the intentional misrepresentations and omissions by Ghilardi and Milititsky (Compl. ¶¶ 32, 38, 41, 44, 49-50), had they reviewed the underlying documentation showing that Plaintiffs continued to do business with Ghilardi and Milititsky after they left Defendants.

(*Id.* at ¶ 12).  Plaintiffs further agreed to produce a 30(b)(6) deponent for Windsor's directors, Barcot and Densat, on August 13 and 14 in New York.  (*Id.*).

> **3.  THE JUNE 13, 2013 CONFERENCE AND PLAINTIFFS' DEFAULT UNDER THE APRIL 30 ORDER**

At the June 13, 2013 conference, Plaintiffs' counsel admitted that Plaintiffs had not produced the required documents.  (Post Decl. ¶ 16).  Most importantly, Plaintiffs' counsel disclosed that they never obtained Windsor's files and therefore failed to produce a single document from Windsor's files.  (*Id.*).

Moreover, counsel offered no explanation for their failure to produce any electronically stored information from either Valentini or Windsor.  (*See id.* at ¶ 17).  Defendants have identified more than seventy e-mails which were produced by Defendants and which too should have been produced by Plaintiffs and were not.  (*Id.*).

Plaintiffs' counsel attempted to excuse Plaintiffs' discovery failures by stating that his clients are "not sophisticated users of the U.S. court system," "had a misunderstanding of the discovery," and "were very reticent to produce the documents, wrongly thinking the Court would understand."  (Post Decl. Ex. N, at 3:11-13, 3:22-23).  One of Plaintiffs' counsel stated that — even though this action had been commenced over two years ago — he only recently flew to Brazil to meet with Valentini to "describe what are the things [he needs] to do" and received additional paper documents from Valentini during that visit.  (*Id.* at 4:4-5).[6]

The Court stated:

> . . . I find it pretty inexcusable in the sense that they are the ones who availed themselves of this country's court system and they are represented by you, by capable counsel, who I would have thought would explain to them their obligations in terms of what they would and would not have to produce.  Not to

---

[6]   Plaintiffs' counsel who was in Brazil is not a Member of this Bar and was admitted pro hac vice by order dated June 27, 2011.

mention, as counsel's letter makes clear, it is not just a function of whatever documents they may have hidden under their mattress or hidden anywhere else, but whatever documents they have access to, which would include documents from the banks with which they did business.  They have control of those documents within the meaning of the federal rules and have an obligation to turn them over.  You should have known that and you should have clearly instructed them of it.

*     *     *

What I find hard to fathom is why you, as counsel, who understands how litigation in this country works, didn't take the steps necessary to make sure that he complied with the discovery obligations he had, including an unambiguous order of the Court directing you to complete discovery by a date certain.  That's the part I don't understand.

(*Id.* at 4:15-5:4, 5:25-6:6).

In response to the Court's questioning, Plaintiffs' counsel disclosed — for the first time — that the reason no documents had been produced by Windsor was because "the trust was revoked" and "they no longer have control over those documents."  (Post Decl. Ex. N, at 11:15-18).  Without offering any specifics, Plaintiffs' counsel stated that Plaintiffs, as account holders, had been unable to retrieve their trading records from Pine Bank, HSBC, and Banco Santander.

The Court granted Defendants leave to file this motion.

### 4.   VALENTINI'S DOCUMENT PRODUCTIONS FOLLOWING THE JUNE 13 CONFERENCE

Following the June 13 conference, Valentini made supplemental productions.  (Post Decl. ¶ 18).  Valentini's most recent productions contain documents Defendants had been seeking for months including trading records and account statements from Pine Bank, HSBC, and Banco Santander as well as investments with Ghilardi subsequent to Citibank.[7]  (Post Decl. ¶¶ 18-19).  These most recent productions confirmed that Plaintiffs directed trading in substantially similar

---

[7]      Despite counsel's assertions that Plaintiffs could not obtain these documents, the account statements from Banco Votorantim indicate that these documents were printed out two days before the June 13 court conference, presumably by Valentini logging onto his online account.  (Post Decl. ¶ 19).

structured notes at these financial institutions during the same time frame, as Plaintiffs directed the transactions through Defendants.[8]  (Post Decl. ¶ 18).

Notwithstanding Valentini's most recent productions, Windsor has failed to produce a single document from its files.  Neither Plaintiff has produced a single electronic document. Moreover, Plaintiffs have not produced their tax returns as they had agreed to do.  Nor has Valentini produced any documents concerning his prior investments in Brazilian bonds.  (*Id.* at ¶ 20).

In short, Windsor's document production is nonexistent and Valentini still has failed to comply with his most basic discovery obligations.

## **ARGUMENT**

## **I.**

## **SANCTIONS UNDER RULE 37(b)**
## **ARE WARRANTED AGAINST WINDSOR**

Under Federal Rule of Civil Procedure 37(b), when a party fails to comply with a discovery order, the court may issue "further just orders" which may include "dismissing the action or proceeding in whole or in part," and "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action."  Fed. R. Civ. P. 37(b). Courts have "broad discretion in fashioning an appropriate sanction" and sanctions "may be imposed upon a party that has breached a discovery obligation not only through bad faith or

---

[8]      These records reveal that Plaintiffs purchased more than fifty similar structured notes (many on margin) from Pine Bank, HSBC, and Santander.  (*Id.* at ¶ 18).  Indeed, these documents render Plaintiffs' allegations that they were unsophisticated investors with no experience in structured notes or margin demonstrably false. (*See* Compl. at 2, ¶¶ 31, 65).  Judge Sand relied on the truth of these allegations in denying in part Defendants' motion to dismiss the Complaint.  *See* Memorandum and Order dated December 26, 2011, at 16-17.

gross negligence, but also through ordinary negligence." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106 (2d Cir. 2002).[9]

Sanctions under Rule 37(b) are "intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 148-49 (2d Cir. 2010); *see also Nat'l Hockey League,* 427 U.S. 639, 643 (1976) (noting that Rule 37 sanctions may serve both to "penalize those whose conduct may be deemed to warrant" them and to "deter [those] who might be tempted to such conduct in the absence of such a deterrent").   Thus, "[e]ven when a party finally (albeit belatedly) *complies* with discovery orders after sanctions are imposed, these purposes may still justify the sanctions." *S. New England Tel. Co.*, 624 F.3d at 149 ("[I]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules.").

In light of the record here, the sanctions under Rule 37(b) discussed below are warranted.[10]

## A.   DISMISSAL OF WINDSOR'S CLAIMS IS WARRANTED

When a litigant "fails to obey an order to provide or permit discovery" the court may issue an order "dismissing the action or proceeding in whole or in part."   Fed. R. Civ. P.

---

[9]     In addition to its broad discretion under Federal Rule 37(b), the Court is empowered to impose sanctions for misconduct in discovery under its inherent power to manage its own affairs. *See, e.g.*, *Residential Funding*, 306 F.3d at 107 (citing *DLC Mgmt. Corp. v. Hyde Park*, 163 F.3d 124, 135-36 (2d Cir. 1998)).

[10]     The relief sought herein is equally justified under the Court's inherent powers and Federal Rules of Civil Procedure 16(f)(1)(C) and (2), 26(g)(3), and 28 U.S.C. § 1927. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49-51 (1991).   Indeed, because the violations at issue include the violation of a court order as well as the improper certifications of discovery disclosures and responses, the Rules require that a Court "must impose" and "must order" an appropriate sanction.  Fed. R. Civ. P. 16(f)(2) and 26(g)(3) (emphasis added).  *See* § III, *infra*.

37(b)(2)(A)(v); *Agiwal v. Mid Island Mortg. Corp*., 555 F.3d 298, 302 (2d Cir. 2009) ("all litigants . . . have an obligation to comply with court orders . . . and failure to comply may result in sanctions, including dismissal with prejudice.").  In this Circuit, courts have dismissed actions under Rule 37(b), "where only one discovery order is violated or where a party has demonstrated willful disrespect for discovery obligations." *Montblanc-Simplo GmbH v. Colibri Corp.*, 692 F. Supp. 2d 245, 252 (E.D.N.Y. 2010) (citing *Altschuler v. Samsonite Corp.*, 109 F.R.D. 353, 357 (E.D.N.Y. 1986) (imposing dismissal sanction where a litigant failed to obey a court order without "justifiable excuse" or a demonstration of "an inability to comply with discovery requests or the court order")); *see also Indep. Investor Protective League v. Touche Ross & Co.*, 607 F.2d 530, 534 (2d Cir. 1978) (failure to respond to interrogatories and obey a court order warranted dismissing the complaint); *Int'l Mining Co. v. Allen & Co*., 567 F. Supp. 777, 789-90 (S.D.N.Y. 1983) (plaintiff's failure to produce documents, supply adequate answers to interrogatories without justifiable excuse warrants dismissal of a complaint).

Courts may consider numerous factors in imposing a sanction of dismissal including: (i) the willfulness of non-compliance; (ii) the duration of non-compliance; (iii) the efficacy of lesser sanctions; and (iv) the existence of warnings of the consequences of non-compliance. *Shcherbakovskiy v. Seitz*, 450 Fed. App'x 87, 88 (2d Cir. 2011).  These factors, however, are "not exclusive" and "need not each be resolved against the party challenging" the sanctions.  *Id.* Moreover, the court is "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record."  *Id.*

Here, the dismissal of Windsor's claims is warranted:  Notwithstanding two years of litigation, Windsor has failed to retrieve and produce a *single* document from its files or from the files of any of its officers and directors (Barcot and Densat) or from its administrator, Santander

Bank & Trust.  Moreover, all along Plaintiffs led Defendants and this Court to believe that they were complying with their obligations, that they were producing Windsor's files, and that they had control over Windsor directors Barcot and Densat whom they agreed to produce them for a 30(b)(6) deposition on August 13 and 14 in New York.  (Post Decl. ¶ 12).  At no time did counsel ever suggest that they had not collected — much less lacked control over — documents from a client which they purportedly represent.  The June 13, 2013 conference was the first time Plaintiffs disclosed that they "no longer have control over" Windsor's documents and that the trustee "won't even talk to" Plaintiffs' counsel. (Post Decl. Ex. N, at 11:9-19). [11]

Plaintiffs' wholesale failure to produce Windsor's files is particularly egregious given that:

- The Complaint's allegations — on which Judge Sand relied in denying in part Defendants' motion to dismiss — are predicated on Windsor's unsophistication, failure to understand the Notes, and their alleged failure to receive documentation concerning the Notes.  (Compl. at 2, ¶¶ 36, 45, 50, 58, 65).

- On June 15, 2012, Plaintiffs, in their Rule 26(a)(1) disclosures, identified Windsor, its administrator (Santander Bank & Trust)), and its directors (Barcot and Densat) each as "individuals likely to have discoverable information."  (Post Decl. ¶ 8, Ex. B, at 2).

- On January 21, 2013, Plaintiffs responded to Defendants' requests for the production of documents and agreed to produce documents on behalf of Windsor.  (Post Decl. ¶ 8, Ex. E).

- On March 6 and 14, 2013, the parties executed and the Court so-ordered a Rule 26(f) discovery protocol whereby Plaintiffs agreed to preserve, search and produce hard copy and electronically stored information from various custodians including Windsor and all of its officers, directors, and signatories.  (Post Decl. ¶ 8, Ex. F).

- On April 30, 2013, the Court specifically ordered the parties to complete all outstanding document productions by May 17, and Plaintiffs failed to disclose to the

---

[11]     Given Plaintiffs' recent admission that they are unable to retrieve Windsor's documents, Defendants have serious concerns about whether a preservation notice was ever provided to Windsor, Barcot, Densat, Santander Bank & Trust, and Valentini. On June 14, 2013, Plaintiffs' counsel was asked to provide their preservation notices, but Plaintiffs' counsel failed to respond. (Post Decl. ¶ 21, Ex. O).

Court that they had never retrieved Windsor's documents and that they had never retrieved electronically stored data.  (Post Decl. ¶ 11, Ex. J).

- Counsel for Defendants asked counsel for Plaintiffs repeatedly why no documents had been produced on behalf of Windsor and received no explanation.  (*See* Post Decl. ¶¶ 10-16, Ex. I).

Accordingly, given Windsor's complete disregard of the Court's Orders and its violation of its fundamental discovery obligations, and given that Plaintiffs misled the Court and Defendants to believe Windsor was complying with its obligations, dismissal of Windsor's claims is warranted.  *Rammal v. Timberland Co.*, No. 93 Civ. 8936 (LAP), 1995 WL 559394, at *4 (S.D.N.Y. Sept. 20, 1995) (applying *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979)  and imposing dismissal sanction where defendant "spent over a year and nearly $50,000.00 in counsel fees . . . doing nothing but trying to obtain the preliminary discovery necessary to meet the plaintiffs' claims").  Defendants have been and will continue to suffer substantial prejudice in defending Windsor's claims without having access to Windsor's files.  Any sanction short of dismissal would undoubtedly fail to "deter those who might be tempted to such conduct in the absence of such a deterrent."  *S. New England Tel. Co.*, 624 F.3d at 149; *see also Cine*, 602 F.2d at 1065-68 (imposing sanction "tantamount to . . . dismissal" because counsel had defied court orders and "frozen [that] litigation in the discovery phase" for over four years).

**B.    IN THE EVENT WINDSOR'S CLAIMS ARE NOT DISMISSED, AN ORDER SHOULD BE ISSUED ESTABLISHING CERTAIN FACTS**

When a litigant "fails to obey an order to provide or permit discovery," the court may issue an order finding that "designated facts be taken as established for purposes of the action, as the prevailing party claims" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii).  To obtain an order under Rule 37(b)(2)(A)(i), "the party seeking the

designation must show:  (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a 'culpable state of mind,'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 253 (S.D.N.Y. 2012) (quoting *Residential Funding*, 306 F.3d at 107) (making adverse finding based on party's "willful refusal to turn over materials").  As set forth below, each of these factors is satisfied.

In failing to produce any documents — while all along leading the Court and Defendants to believe it was complying with its obligations — Windsor acted with a culpable state of mind. (*See* Post Decl. ¶ 12).  *See PSG Poker, LLC v. DeRosa-Grund*, 06 Civ. 1104, 2008 WL 190055, at *12 (S.D.N.Y. Jan. 22, 2008) (repeated failure to produce relevant documents "or a credible story regarding their whereabouts" interpreted as an intentional and willful act).

The documents Windsor has failed to produce are deemed relevant in light of Plaintiffs' disregard of two Court orders.  S*ee Manhattan Apartments*, 286 F.R.D. at 254 (Plaintiffs' "bad faith alone is sufficient circumstantial evidence to support the inference" that the documents withheld are relevant (quoting *Residential Funding*, 306 F.3d at 109 (quotations omitted))). Even if Windsor's wholesale failure to produce was not in bad faith, but instead only knowing or negligent, there is nevertheless "sufficient evidence from which a reasonable trier of fact could infer that the . . . unavailable evidence would have been of the nature alleged" by Defendants in this case, and, therefore, relevant.  *Residential Funding*, 306 F.3d at 109 (quoting *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998) (quotations and alterations omitted)).  In any event, Windsor's files are highly relevant because they would enable Defendants to refute the Complaint's fundamental allegations regarding sophistication, inexperience with structured

notes, Windsor's reliance on Defendants, and the purported failure to receive documentation describing the Notes.  (*See, e.g.*, Compl. at 2, ¶¶ 32, 36, 38, 41, 44-45, 49-50, 65).

Accordingly, in the event that Windsor is not dismissed from this action, it is respectfully requested that the following facts be established for purposes of this action:

(i)     Windsor directed the purchase and sale of each of the Notes in its account at Citibank.

(ii)    Windsor selected the underlying securities with respect to each Note.

(iii)   The purchase of each Note at Citibank was not solicited by Citibank.

(iv)   Windsor sought aggressive returns in purchasing the Notes.

(v)    Windsor requested that Citibank provide it with leverage in order to acquire the Notes.

(vi)   Windsor signed the Structured Notes Master Agreement and understood each of the risks therein including, but not limited to, the risk that Windsor could lose all of its principal.

(vii)  Windsor knew and understood that purchasing the Notes with the use of leverage through Citibank's loans increased the risk of loss, including a complete loss of principal.

(viii) No statements were made to Windsor by either Milititsky or Ghilardi when it purchased the Notes that they were safe and carried no risk of loss.

(ix)   Windsor knew and understood that given Citibank's loans, Windsor would be subject to margin calls if the value of its collateral fell below certain levels.

(x)    Windsor received documents for each Note describing the risks, the underlying securities, the potential returns, and "knock out levels" of each Note.

(xi)   Windsor was a sophisticated investor.

(xii)  Windsor sought aggressive returns in acquiring structured notes at HSBC and Banco Santander (both Windsor accounts).

(xiii) Windsor did not instruct Defendants to invest in conservative investments.

In short, dismissal of Windsor's claims is warranted as a deterrent and because Defendants are prejudiced by Windsor's failure to produce its files. If allowed to proceed, at minimum the foregoing findings would be justified.

## II.

## SANCTIONS AGAINST VALENTINI
## UNDER RULE 37(b) ARE WARRANTED

It was not until after the June 13 conference that Valentini produced from his files trading records from other banks or records concerning his current trading with Ghilardi and Milititsky. Counsel's representations to the Court that Valentini had tried but was unable to obtain his account statements are belied by Plaintiffs' recent partial production including the productions that Valentini made from his online account. (*See* Post Decl. ¶ 19). Valentini still has failed to produce any electronically stored information. (*See id.* at ¶ 20). Nor has Valentini produced all communications concerning his trading at Citibank, HSBC, Pine Bank and Banco Santander or with respect to his continued business with Milititsky and Ghilardi, tax returns, and documents concerning his prior trading in high yield Brazilian government bonds. (*Id.* at ¶¶ 20-21)

Accordingly, given Valentini's abdication of his discovery obligations and continued violation of two Court Orders, dismissal of his claims is required. *See, e.g.*, *Rammal*, 1995 WL 559394, at *5 (imposing dismissal sanction for non-compliance with discovery orders and compiling cases regarding the same); *Onyemaobi v. Covenant House*, No. 09 Civ. 2434(PAC), 2011 WL 1044490, at *3 (S.D.N.Y. Mar. 21, 2011) (dismissing plaintiff's case with prejudice after repeated failures to produce documents, including e-mails, subject to document requests).[12]

---

[12]    In the event Valentini's claims are not dismissed, Defendants respectfully request that this Court issue yet another order directing Valentini to retrieve and produce all electronically stored information responsive to the Requests.

15

As with Windsor, in the event Valentini's claims are not dismissed, certain facts should be established for purposes of this action:

(i)    Valentini accumulated the majority of his wealth trading high yield, below investment grade, Brazilian debt.

(ii)   In acquiring Brazilian debt, Valentini knew and understood the risk of trading in high yield bonds.

(iii)  In acquiring Notes at CFSC, Valentini represented that he is a sophisticated investor with knowledge and experience in investment matters such as structured notes. This representation was true at the time Valentini made it.

(iv)   The purchase of the Notes by Valentini was not solicited by CFSC.

(v)    Valentini directed the purchase of each Note in his account and he selected the stocks underlying each of the Notes he purchased at CFSC.

(vi)   Valentini knew and understood that all principal could be lost at the time he purchased the structured notes through Pine Bank, HSBC, Banco Santander and Defendants.

(vii)  After Milititsky left Citibank in 2008, Valentini opened an account with Milititsky at Merrill Lynch. In opening the account and continuing to do business with Milititsky, Valentini did not believe that Milititsky misrepresented the riskiness of the Notes, or that he misrepresented or failed to disclose any attributes of the Notes he purchased through Defendants or that he directed Windsor to purchase at Citibank.

(viii) After Ghilardi left Citibank, Valentini opened an account with Ghilardi at Votorantim. In opening the account and continuing to do business with Ghilardi, Valentini did not believe that Ghilardi misrepresented the riskiness of the Notes or that he misrepresented or failed to disclose any attribute of the Notes he purchased through Defendants or that he directed Windsor to purchase at Citibank.

## III.

## <u>COSTS AND FEES ARE WARRANTED</u>

Given Plaintiffs' default of the Court's April 30 Order — which is continuing — and their disregard of the Court-Ordered Rule 26(f) discovery protocol, together with their complete

abuse of the discovery process over a sustained period of time, the sanction of costs and attorney's fees is required.

Pursuant to Federal Rule 16(f)(1)-(2) "[i]nstead of or in addition to any other sanction, the court <u>must order</u> the party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with this rule."  Fed. R. Civ. P. 16(f)(1)-(2) (emphasis added); *Man Wei Shiu v. New Peking Taste Inc.*, No. 11–CV–1175 (NGG)(RLM), 2013 WL 2351370, at *11 (E.D.N.Y. May 28, 2013) (under Rule 16(f), "[a]bsent substantial justification or special circumstances, attorney's fees are <u>mandatory</u>" (emphasis added)).

Likewise, Federal Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See also Gordon v. Kaleida Health*, No. No. 08–CV–378S(F), 2013 WL 2250431, at *7 (W.D.N.Y. May 21, 2013) ("However, this contention overlooks Fed. R. Civ. P. 37(b)(2)(C) which specifically requires the court award such expenses . . . unless the sanctioned party's failure to comply with the underlying order compelling discovery was substantially justified or an award of such expenses would, under the circumstances, be unjust.").

Further, pursuant to Federal Rule 26(g)(3), where a party's required certification of discovery responses and disclosures — such as Plaintiffs' initial disclosures and responses to Defendants' document requests both of which responded on behalf of Windsor — is violated "without substantial justification, the court, on motion or on its own must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." *Id.* at 26(g)(3);

*Kara Holding Corp. v. Getty Petroleum Mktg., Inc.* No. 99 Civ. 0275(RWS), 2004 WL 1811427, at *23 (S.D.N.Y. Aug. 12, 2004) ("The imposition of sanctions for a violation of Rule 26(g) is mandatory, although a court has discretion over '*which* sanction it must impose.'" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991)).

Because Plaintiffs have improperly certified that discovery responses were being made on behalf of Windsor (*see* Post Decl. ¶¶ 5, 8) and because Plaintiffs have violated a scheduling or other pretrial order (*see id.* at ¶¶ 11, 16), the Court must impose sanctions under Federal Rules 16(f)(2), 26 (g)(3) and 37(b)(2)(C).[13]

Defendants respectfully request an award of all costs and attorney's fees incurred in connection with the discovery process, including all costs and fees in connection with this motion. Defendants will be prepared to make a submission setting forth their specific costs and attorney's fees after full briefing of this motion.

## IV.

## PLAINTIFFS SHOULD BE REQUIRED TO POST SECURITY  PURSUANT TO LOCAL RULE 54.2

Windsor is obligated under the Structured Notes Master Agreement to indemnify Defendants "to the fullest extent permitted by law from and against any loss, liability, cost, claim, action, demand or defense (including, but not limited to, all reasonable costs, charges and expenses paid or incurred in disputing or defending any of the foregoing)" which "may incur or which may be made against them by [Windsor], or any breach of the client's representations, warranties and obligations under this Master Agreement"  (Post Decl. Ex. A, at 6).  Accordingly,

---

[13]     In addition to mandatory sanctions, because Plaintiffs' conduct has also multiplied the proceedings unreasonably and vexatiously, the Court could alternatively ground its award of sanctions on 28 U.S.C. § 1927. Sanctions under 28 U.S.C. § 1927 require findings that the Plaintiffs acted: (i) "without a colorable basis" and (ii) in "bad faith." *See, e.g., Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (imposing sanctions under 28 U.S.C. § 1927 because attorney acted without a "colorable basis" and in bad faith).

and because Plaintiffs will additionally owe Defendants reimbursement if this motion prevails, in order to continue with this litigation Plaintiffs should be ordered to post security pursuant to Local Rule 54.2 of not less than $750,000 to ensure satisfaction of these obligations.

Local Rule 54.2 provides that "[t]he Court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." The "primary purpose of the rule is to ensure that the prevailing party will be able to collect the costs and fees owed to it in situations where the other party is unlikely or unwilling to pay." *Kensington Int'l Ltd. v. Republic of Congo*, No. 03 Civ. 4578 (LAP), 2005 WL 646086, at *1 (S.D.N.Y. Mar. 21, 2005) (citing *Selletti v. Carey*, 173 F.3d 104, 111-12 (2d Cir. 1999)). Under Rule 54.2, the posting of a bond is appropriate where the non-moving party has contractually agreed to reimburse the movants' legal expenses. *See id.* (granting security totaling $450,000, including current attorney's fees in excess of $300,000, on basis of contractual agreement to pay attorney's fees and other reasons); *Herbstein v. Bruetman*, 141 F.R.D. 246, 247 (S.D.N.Y. 1992) ("security for costs may include attorney's fees to which a party is potentially entitled"). Rule 54.2 security is also appropriate where the fee award derives from a sanctions application. *See, e.g.*, *Bressler v. Lievman*, No. 96-cv-9310 (LAP), 1997 WL 466553, at * 9 (S.D.N.Y. Aug. 14, 1997) ("plaintiff and his counsel face potential liability under applicable sanctioning mechanisms for both the costs of unnecessary litigation and attorney's fees. The bond required of them should be adequate to secure this potential liability.").

On a motion for security for costs, courts generally consider a series of factors, including: "[1] the financial condition and ability to pay of the party at issue; [2] whether that party is a non-resident or foreign corporation; [3] the merits of the underlying claims; [4] the extent and scope of discovery; [5] the legal costs expected to be incurred; and [6] compliance with past

court orders." *Selletti v. Carey*, 173 F.R.D. at 100-01 (citations omitted).  Each factor is satisfied here:

    (i)    Windsor's counsel has represented that the Windsor trust has been "revoked."  (Post Decl. Ex. N, at 11:15).  This alone calls Windsor's financial condition and ability to pay into question.  *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 221 (S.D.N.Y. 2006) ("a party's apparent financial inability to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a cost bond under Rule 54.2"); *Oilex A.G. v. Mitsui & Co*., 669 F. Supp. 85, 88 (S.D.N.Y. 1987) (ordering security bond where plaintiff had no assets or was out of business).

    (ii)    Windsor — to the extent it still exists — is a Bahamian trust and its trustees, directors and signatories are all non-residents or foreign entities.  (*See* Post Decl. Ex. B, at 2; Ex. N, at 11:15-12:11).  *See, e.g.*, *Sea Trade Co. v. FleetBoston Fin. Corp.*, 03 Civ. 10254(JFK), 2008 WL 161239, at *2 (S.D.N.Y. Jan. 15, 2008) ("Plaintiffs' status as foreign corporations counsels in favor of requiring them to post a bond as security for costs.") (citation omitted).

    (iii)    The governing indemnification provision of the Structured Notes Master Agreement obligates Windsor to indemnify Defendants regardless of the outcome of this action.  (Post Decl. Ex. N, at 6).

    (iv)    Most importantly, Plaintiffs have shown no regard for this Court's prior Orders.

The posting of security in the amount of $750,000 is warranted under all of these circumstances. *See, e.g.*, *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, No. 06-cv-3085

(KMW)(FM), 2008 WL 2876508, at *3 (S.D.N.Y. July 21, 2008) (plaintiff's "foreign status and lack of United States assets consequently also supports the posting of a bond").

## CONCLUSION

In view of the foregoing, it is respectfully requested that the Court award the sanction of dismissal of the Complaint or, in the alternative, the establishment of certain facts, together with the award of costs and attorney's fees, and order that Plaintiffs be required to post security for costs and attorney's fees, together with such other relief that the Court deems just and proper.

Dated: New York, New York
       June 24, 2013

FRESHFIELDS BRUCKHAUS DERINGER
US LLP

By:     /s/ Marshall H. Fishman

        Marshall H. Fishman
        Dana L. Post
        Samuel J. Rubin
        601 Lexington Avenue, 31st Floor
        New York, New York 10022
        212-277-4000
        marshall.fishman@freshfields.com
        dana.post@freshfields.com
        samuel.rubin@freshfields.com

*Attorneys for Defendants Citicorp Financial Services Corporation, k/n/a Citi International Financial Services, LLC, Citibank, N.A., and Citi Private Bank*

US1647220                              21