```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/16/2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
BERNARDO VALENTINI et al.,                          :
                                                    :
                    Plaintiffs,                     :
                                                    :          11 Civ. 1355 (JMF)
         -v-                                        :
                                                    :          OPINION AND ORDER
CITIGROUP, INC. et al.,                             :
                                                    :
                    Defendants.                     :
                                                    :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

     Defendants Citicorp Financial Services ("CFSC"), Citibank, N.A. ("Citibank"), and Citi

Private Bank (collectively, "Defendants"), bring this motion for discovery sanctions against

Plaintiffs Bernardo Valentini ("Valentini") and Windsor International Co. ("Windsor")

(collectively "Plaintiffs"), pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, for

asserted violations of the Court's April 30th Revised Civil Case Management Plan and

Scheduling Order (the "April 30th Order") and the Rule 26(f) Court Ordered Discovery Protocol,

dated March 14, 2013 (the "Discovery Protocol").  Defendants also seek the imposition of

security for costs pursuant to Local Rule 54.2, and have filed a separate motion to amend the

Answer.[1]  Plaintiffs oppose the motion for sanctions and security for costs, contending that they

are now in compliance with the April 30th Order, that they did not violate their discovery

obligations in bad faith, and that Defendants were not prejudiced by the late production of

documents.  They also oppose Defendants' motion to amend on grounds of futility and delay.

---

[1]    Defendants also assert that Plaintiffs and their counsel violated Rule 11 of the Federal
Rules of Civil Procedure by failing to review Windsor's files and reviewing only portions of
Valentini's files prior to filing this lawsuit.  Defendants request that the Court direct Plaintiffs to
show cause why a Rule 11 violation has not occurred.  (Mem. in Supp. Sanctions 2 n.1).  The
Court declines to do so at this time.

For the reasons set forth below, Defendants' motion for sanctions and security for costs is
GRANTED IN PART, and Defendants' motion to amend the Answer is GRANTED.

## BACKGROUND

Pursuant to the Court-ordered case management plan governing this action, Defendants
served Plaintiffs with their First Request for Production of Documents on December 19, 2012,
requesting documents related to, among other things: (1) Valentini's communications with two
of Defendants' employees; (2) a lawsuit that Pine Bank instituted against Valentini in Brazil; (3)
Plaintiffs' purchase of structured notes from various financial institutions; and (4) Valentini's
prior investments in Brazilian debt and securities. (*See* Post Decl. ¶ 6 & Ex. C).[2]  In their
Response, dated January 21, 2013, Plaintiffs agreed to produce these documents (*id.* Ex. E), and
in the parties' Discovery Protocol, which was so-ordered by the Court on March 14, 2013,
Plaintiffs agreed to search their electronically stored information for documents responsive to
Defendants' requests (*id.* Ex. F).  After Plaintiffs failed to produce these documents in their
initial production, Defendants repeated their requests in letters dated March 20, April 3, and May
2, 2013. (*See id.* ¶ 10, Ex. I).  Plaintiffs never responded to these letters. (*Id.* ¶ 10).  Defendants
informed the Court of Plaintiffs' discovery deficiencies at an April 29, 2013 status conference,
and by Order dated April 30, 2013, the Court directed that the parties "shall complete all
outstanding production of documents by Friday, May 17, 2013." (Docket No. 42).

By letters dated May 21, 2013, May 24, 2013, and June 6, 2013, Defendants informed the
Court that Plaintiffs had failed to comply with the April 30th Order. (Docket Nos. 44, 46 & 49).
On June 13, 2013, the parties appeared before the Court for a status conference to address

---

[2]       The Court assumes familiarity with the underlying facts of this case, which can be found
in the December 26, 2011 Opinion and Order by the Honorable Leonard B. Sand, to whom this
case was previously assigned. *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304 (S.D.N.Y. 2011).

Plaintiffs' discovery deficiencies.  At the conference, Plaintiffs' counsel informed the Court that they had recently discovered that Plaintiff Valentini had withheld numerous documents that counsel believed should have been produced to Defendants.  (Post Decl. Ex. N at 3:10-5:21). Plaintiffs' counsel also disclosed that Windsor had not produced *any* documents in response to Defendants' discovery requests because the Windsor trust had been "revoked" and "they no longer have control over those documents."  (*Id.* at 11:15-18).

Pursuant to a Scheduling Order issued the same day, on June 24, 2013, Defendants filed their motion for sanctions for Plaintiffs' repeated failures to produce discovery materials in violation of the April 30th Order and the Discovery Protocol.  Defendants seek dismissal of Plaintiffs' Complaint or, in the alternative, request "that the Court order the establishment of certain facts, together with the award of costs and attorney's fees, and order that Plaintiffs be required to post security for costs and attorney's fees."  (Reply Mem. in Supp. Mot. for Sanctions 5-6).  On July 9, 2013, Defendants separately moved to amend the Answer under Federal Rule of Civil Procedure 15(a)(2) to include: (1) an affirmative defense that Windsor lacks capacity and standing to maintain this lawsuit; and (2) a counterclaim for indemnification against Windsor for legal fees and expenses that have accrued, and continue to accrue, in this lawsuit.  Plaintiffs oppose Defendants' motions.

## DISCUSSION

### A.  Sanctions

Federal Rule of Civil Procedure 37 permits a court to impose a variety of sanctions for discovery-related abuses, and "affords the court 'broad discretion in fashioning an appropriate sanction.'"  *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195 (E.D.N.Y.2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002)).  The range of

sanctions available to a court includes — but is not limited to — "orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting a default judgment against the disobedient party; or entering an order of contempt." *Id.* Where, as here, a party alleges that the opposing party failed to disclose documents it was required to produce, the "moving party bears the burden of showing that its adversary failed timely to disclose information required by Rule 26." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007). To satisfy this burden, the moving party must demonstrate: "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." *Id.* (quoting *Residential Funding*, 306 F.3d at 107).

    Defendants have made these showings. First, Plaintiffs clearly had an obligation to produce the requested materials under their control. In their First Request for Production of Documents, Defendants submitted specific requests to Plaintiffs, and those requests were well within the scope of permissible discovery (*see* Post Decl. ¶ 6 & Ex. C), and renewed these requests in letters dated March 20, April 3, and May 2, 2013 (*id.* ¶ 10 & Ex. I). Plaintiffs never responded to these requests, even after the Court's April 30th Order directed the parties to complete all document production by May 17, 2013.

    Second, Plaintiffs had a culpable state of mind, as they and their counsel were at least negligent in failing to properly search for and produce responsive documents in a timely and thorough manner. *See Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 254 (S.D.N.Y.

2012) ("MA's repeated refusal to turn over relevant documents — in direct violation of three separate Court orders — is enough to establish culpability."); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y. 2010) ("In the Second Circuit, negligence is sufficient to establish culpability." (citing *Residential Funding*, 306 F.3d at 108)).  Plaintiffs' counsel argues that their clients are "not sophisticated users of the U.S. court system," "had a misunderstanding of the discovery [process]," and "were very reticent to produce the documents, wrongly thinking the Court would understand."  (Post Decl. Ex. N at 3:11-13, 3:22-23).  Yet, as the Court stated on the record at the June 13th conference, having availed themselves of the United States court system, Plaintiffs have no credible excuse for their blatant disregard of the court's discovery process.

Moreover, Plaintiffs are represented by competent United States counsel.  Counsel had an obligation to advise their clients of their discovery obligations and to ensure that the relevant documents were produced.  *See Yu Chen v. LW Rest, Inc.*, No. 10 Civ. 200 (ARR), 2011 WL 3420433, at *9 (E.D.N.Y. Aug. 3, 2011) (explaining that "once a party reasonably anticipates litigation," discovery obligations arise and "run[] first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit" (internal quotation marks omitted)).  Although Defendants served their First Request for Production of Documents on December 19, 2012, there is no evidence — and no claim by Plaintiffs — that counsel worked with Valentini to respond to Defendants' requests.  Indeed, it appears that Plaintiffs' counsel did not travel to Brazil to meet with Valentini to discuss his obligation to produce responsive documents until June — nearly *seven months* after the requests were made, and nearly two and a half years after Plaintiffs commenced this action.  Moreover, in his deposition on July 23-25, 2013, Valentini testified that his counsel was not involved in collecting any electronically stored information and that he merely instructed an employee and his son to conduct a search for

responsive e-mails.  (*See* Supp. Post Decl. (Docket No. 71) Ex. A at 59:2-61:18, 66:25-67:9; 694:25-695:10; 700: 17-25).  These failures, combined with Plaintiffs' cavalier attitude toward their discovery obligations, are entirely inexcusable and plainly sufficient to establish at least a negligent state of mind.

Finally, the requested documents are relevant because they bear on the central allegations in the Complaint, namely the reasonableness of Plaintiffs' reliance and Defendants' alleged fraudulent representations.  (*See, e.g.*, Compl. at 2, ¶¶ 32, 36, 38, 41, 44-45, 49-50, 65).  Moreover, "[e]ven conduct characterized as 'purposeful sluggishness,' or intentional delay, can support a finding of relevance, as can intentional acts that 'hinder discovery.'"  *Short*, 286 F.R.D. at 254 (quoting *Residential Funding*, 306 F.3d at 109-10).  Because Defendants have satisfied their burden of showing that Plaintiffs failed to comply with their discovery obligations, that the breach of these obligations was at least negligent, and that the documents are relevant, imposition of Rule 37 sanctions is warranted.

The Court must next determine the appropriate sanction to impose, considering "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance."  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (internal quotation marks omitted).  The Court must also consider the extent to which the prevailing party has been prejudiced by the defaulting party's noncompliance, *see Anthropologie, Inc. v. Forever 21, Inc.*, No. 07 Civ. 7873 (RJS) (MHD), 2009 WL 690126, at *3 (S.D.N.Y. March 13, 2009), and must ensure that any sanction imposed is "just and commensurate with the failure to comply," *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009).  Extreme sanctions, such as striking a pleading or

entering judgment against the offending party, are "pungent, rarely used, and conclusive.  A district judge should employ [them] only when she is sure of the impotence of lesser sanctions." *Ocello v. White Marine, Inc.*, 347 F. App'x 639, 641 (2d Cir. 2009) (internal quotation marks omitted).

After considering these factors, the Court concludes that neither dismissal of the Complaint nor issuance of an order establishing certain facts are appropriate measures to sanction Valentini's behavior, at least at this time.  Although Valentini's failure to comply with his discovery obligations was unjustified, there is no evidence in the parties' motion papers to suggest that it was a result of willfulness or maliciousness.  Moreover, the parties were not previously warned of the possibility of these harsh sanctions and, although Valentini has been deficient in his discovery obligations for more than six months, fact discovery is not scheduled to close until December 13, 2013, and there is no evidence that Defendants have been significantly prejudiced by the delay.  Finally, the Court believes less drastic measures may be sufficient to deter Valentini's dilatory conduct.  Accordingly, the Court finds that the appropriate sanction for Valentini's noncompliance with his discovery obligations is the imposition of costs and fees pursuant to Rule 37(c)(1)(A).  Valentini, therefore, shall pay to Defendants all attorney's fees and costs that Defendants incurred as a result of Plaintiffs' delay in disclosing the relevant materials.  *See, e.g.*, *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 574-75 (S.D.N.Y. 2010) (imposing costs and fees party incurred in bringing Rule 37 motion).  This amount shall include the costs and fees Defendants incurred in bringing the instant motion.[3]

---

[3]      In their memorandum in support of their motion for sanctions, Defendants assert that there are a number of documents that Valentini has still failed to produce.  Specifically, Defendants claim that Valentini has failed to produce any electronically stored information, as well as "communications concerning his trading at Citibank, HSBC, Pine Bank and Banco Santander or with respect to his continued business with Milititsky and Ghilardi, tax returns, and documents concerning his prior trading in high yield Brazilian government bonds."  (Mem. in

The same sanctions are imposed on Windsor.  There is a strong argument, however, that additional, and more severe, sanctions should be imposed against Windsor.  Among other things, Defendants assert that Windsor has failed to produce a single document from its files (Mem. in Supp. Mot. for Sanctions 15) — an allegation that Plaintiffs do not deny.  Additionally, excerpts from Valentini's deposition in his capacity as the Rule 30(b)(6) designee for Windsor, which Defendants submitted by letter dated August 12, 2013, suggest that Windsor has not collected or produced any of its files or the files of Windsor's directors and administrator.  (*See* Docket No. 71).  These allegations suggest that Windsor's discovery failures were more blameworthy than Valentini's — and may, in fact, have been willful.  *See, e.g.*, *Agiwal v. HSBC Mortg. Corp.*, 469 F. App'x 69, 70 (2d Cir. 2012) (affirming dismissal of action as sanction for willful noncompliance with discovery orders for more than three months).  Further, they give rise to a much stronger argument that Defendants were prejudiced.

At the same time, Windsor has not been explicitly warned that its conduct may result in the dismissal of its action, *see Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) ("The severe sanction of dismissal with prejudice may be imposed . . . so long as warning has been given that non-compliance can result in dismissal."), and it has not had the opportunity to respond to Defendants' August 12th letter.  Moreover, in the June 13th conference and in the briefing on Defendants' motion, the parties have not focused on the question of whether the two Plaintiffs are differently situated, such that different sanctions should be imposed.  Accordingly, no later than **August 23, 2013**, the parties are each to file a brief, not to exceed eight pages,

---

Supp. Mot. for Sanctions 15).  Pursuant to the Court's Individual Rules, Valentini and Defendants are directed to confer in good faith in an effort to resolve these disputes.  If this meet-and-confer process does not resolve the disputes, Defendants may submit a letter to the Court explaining the outstanding discovery that Valentini has not yet produced.  Valentini is warned that failure to comply with his ongoing discovery obligations will result in additional sanctions, potentially including dismissal of the case.

addressing whether more severe sanctions should be imposed on Windsor, including dismissal from the case, in light of its ongoing failure to meet its discovery obligations.  Separately, the parties are directed to confer regarding Defendants' specific costs and fees that are attributable to Plaintiffs' delay and Defendants are to file a submission setting forth the costs and fees it believes it is owed, including contemporaneous time records, no later than **September 4, 2013**. Plaintiffs shall file any opposition no later than **September 11, 2013**.

## B.  Security for Costs

Defendants also seek the imposition of security for costs pursuant to Local Rule 54.2, which provides that "[t]he Court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate."  "The primary purpose of the rule is to ensure that the prevailing party will be able to collect the costs and fees owed to it in situations where the other party is unlikely or unwilling to pay."  *Kensington Int'l Ltd. v. Congo*, No. 03 Civ. 4578 (LAP), 2005 WL 646086, at *1 (S.D.N.Y. Mar. 21, 2005) (citing *Selletti v. Carey*, 173 F.3d 104, 111-12 (2d Cir. 1999)). "The security for costs may include attorneys' fees, especially in situations such as this, where [one party has] contractually agreed to reimburse [the others'] legal expenses."  *Id.*  "While there are no set guidelines for applying Rule 54.2," courts generally consider "1) the party's ability to pay; 2) whether the party is present within the United States; 3) the party's compliance with past court orders; 4) the extent and scope of discovery; 5) the legal costs expected to be incurred; and, 6) the merit of the underlying claims."  *Id.*

Here, the Structured Notes Master Agreement ("SNMA") between Windsor and Citibank requires Windsor to indemnify Defendants from any "loss, liability, cost, claim, action, demand or expense . . . which [Defendants] may incur" in this action, including costs and fees.  (Post

Decl. Ex. A at 6).  Plaintiffs' counsel has represented that the Windsor trust has been "revoked" (*id.* Ex. N at 11:15), which suggests that Windsor may be unable to pay Defendants' costs and attorney's fees under the indemnification provision.[4]  Further, Windsor is a foreign trust, and its trustees, directors, and signatories are all non-residents or foreign entities.  (*See id.* Ex. B at 2; *id.* Ex. N at 11:15-12:11).  And, as discussed above, Plaintiffs have repeatedly failed to comply with their discovery obligations and Court orders.  These three factors weigh in favor of requiring Windsor to post security for costs.  *See RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 221 (S.D.N.Y. 2006) ("[A] party's apparent financial inability to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a cost bond under Rule 54.2."); *Sea Trade Co. v. FleetBoston Fin. Corp.*, 03 Civ. 10254 (JFK), 2008 WL 161239, at *2 (S.D.N.Y. Jan. 15, 2008) ("Plaintiffs' status as foreign corporations counsels in favor of requiring them to post a bond as security for costs.").

As to the fourth and fifth factors, Plaintiffs' conduct has already resulted in significant attorney's fees for Defendants, and it is likely that Defendants' fees will continue to escalate, given that fact discovery does not close for an additional four months.  *Kensington*, 2005 WL 646086, at *1 (imposing a bond because defendant "has resisted discovery, continues to obstruct the progress of the lawsuit and otherwise multiplies [plaintiff's] fees").  Finally, although the parties contest the merits of Plaintiffs' claims, "[w]hen it is not clear which party will prevail, this factor does not weigh heavily in the analysis."  *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08 Civ. 01533 (BSJ) (JCF), 2010 WL 3452375, at *4 (S.D.N.Y. Sept. 1, 2010).

---

[4]    Plaintiffs argue that they should not be required to post a bond because "Defendants themselves portray Valentini as a wealthy, high-flying, sophisticated investor," and therefore "his financial condition is not at issue."  (Mem. in Opp'n 14).  As Defendants correctly note, however, under the Structured Notes Master Agreement, *Windsor* is required to indemnify Defendants; accordingly, *Valentini's* financial condition is irrelevant.

10

In sum, the Court finds that it is appropriate for Windsor to post a bond, pursuant to Rule 54.2, as security for costs.

Defendants request that the Court order Windsor to post a bond in the amount of $750,000, but they do not provide any explanation for the requested amount.  Accordingly, in conjunction with the documentation of costs and fees due by **September 4, 2013**, as required above, Defendants are to submit a memorandum of law, not to exceed five pages, addressing the amount of the bond that Windsor should be required to post.  *See RLS Assocs.*, 464 F. Supp. 2d at 221-22 (explaining that a court "enjoys considerable discretion in setting a bond amount under Rule 54.2," but the amount of the bond must be "informed by both legal and equitable considerations").  Plaintiffs shall file any memorandum of law opposition, not to exceed five pages, no later than **September 11, 2013**.

## C.  Motion to Amend

Defendants have moved separately to amend their Answer under Federal Rule 15(a)(2) to add an affirmative defense and a counterclaim.  Plaintiffs oppose both amendments on grounds of delay and futility.  Under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Accordingly, "[t]he Second Circuit has held that a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (internal quotation marks omitted).  Although "undue delay" is a factor, "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to

deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).

The party opposing a motion to amend bears the burden of establishing that an amendment would be futile. *Ouedraogo v. A-1Int'l Courier Serv., Inc.*, No. 12 Civ. 5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013). An amendment is not "futile" if it could withstand a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). Thus, a court must accept the facts alleged by the party seeking amendment as true and construe them in the light most favorable to that party. *Aetna*, 404 F.3d at 604. A proposed claim or defense is futile if it does not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### 1.  Proposed Affirmative Defense

Defendants first request leave to amend their answer to include an affirmative defense that Windsor lacks capacity and standing to maintain this lawsuit. The caption of the Complaint lists "Windsor International Investment Co., f/k/a Windsor International Investment Corp." as a plaintiff in this action. Defendants have submitted documents establishing that this entity, which was formed under Bahamian law in April 2007, was struck off the Bahamian Register of International Business Companies (the "Register") in January 2011. (*See* Smith Decl. ¶ 2 & Ex. 1). Under Section 167(1)(a) of the Bahamian International Business Companies Act of 2000, once a company has been struck off the Register, it may not legally commence or defend any legal proceedings. (*Id.* Ex. 2 at § 167(1)(a)-(c)).

Plaintiffs do not dispute that Windsor has been struck off the Register; nor do they dispute the relevance of Section 167(1)(a). Instead, they explain that in July 2009, Valentini reincorporated Windsor in Panama and changed the name of the corporation from "Windsor

International Investment Corp." to "Windsor International Business Corp." (Mem. in Opp'n

Mot. to Amend 3-4; Wybiral Decl. Ex. I), and that the caption of the Complaint, which lists

"Windsor International Investment Co." as a plaintiff, is merely a "typographical error." (Mem.

in Opp'n Mot. to Amend 6 (citing Compl. p. 2)). Plaintiffs argue that because Defendants "were

on notice as early as December 2010 that Windsor had (1) changed its name to Windsor

International Business Corp.; and (ii) reincorporated in Panama," and because other portions of

the Complaint correctly identify "Windsor International Business Corp." as Plaintiff,

Defendants' proposed affirmative defense is untimely, as it "could and should have been

included in the answer defendants filed on February 28, 2012." (*Id.*).

Because standing is jurisdictional, however, it cannot be waived and may be raised at any

time by any party or by the Court. *See United States v. Hays*, 515 U.S. 737, 742 (1995).

Accordingly, Defendants' delay in raising the defense is not grounds to deny their motion to

amend. In any event, even if the issue were not jurisdictional, the Court would grant Defendants

leave to amend. Although Plaintiffs produced certain documents in December 2010 that

accurately reflect Windsor's name as "Windsor International Business Corp.," Defendants' delay

in seeking this amendment was not unreasonable. Among other things, the Complaint

inaccurately describes Windsor as a Bahamian entity, and Plaintiffs provided only a Bahamian

address for the company in their initial disclosures, dated June 15, 2012, as well as in their

Objections and Responses to Defendants' First Set of Interrogatories, dated March 18, 2013.

(*See* Post Decl. Ex. A at 2 & Ex. B at 4-5). Further, Plaintiffs do not even argue that the

proposed amendment will cause them undue prejudice or materially delay these proceedings.

Because Plaintiffs have failed to establish bad faith or undue prejudice, the delay of eighteen

months since Defendants' answer was filed is an insufficient ground to warrant denial of their

motion to amend.  Indeed, absent a showing of prejudice or bad faith, the Second Circuit has affirmed orders granting amendments after significantly longer periods of time.  *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995) (four years); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (same); *see also Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384-85 (2d Cir. 1968) (three-and-one-half years).

Plaintiffs also argue that the proposed affirmative defense is futile.  Plaintiffs contend that because Windsor "continued as a valid company during and after its transition to Panama and [D]efendants treated it as such," Defendants are "estopped from denying Windsor's corporate existence."  (Mem. in Opp'n Mot. to Amend 9).  As a general rule, "one who contracts or deals with an entity as a corporation thereby admits that the entity is a corporation and is estopped to deny its incorporation in an action arising out of the contract or course of dealing."  *Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, No. 05 Civ. 3826 (CPS) (RML), 2009 WL 2242331, *5 (E.D.N.Y. Jul 27, 2009).  But here, drawing all reasonable inferences in Defendants' favor, as the Court must, *see Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010), Plaintiffs' conclusory assertion that Defendants treated Windsor as a "valid company" is insufficient to carry their burden of showing futility.

Accordingly, given the Court's considerable discretion in granting amendments and this Circuit's rule of liberally granting amendments in the absence of a showing by the nonmovant of prejudice or bad faith, the Court grants Defendants' motion for leave to amend their Answer to add an affirmative defense challenging Windsor's standing.  The Court also grants Plaintiffs' request to file an amended complaint to correct the caption and to add a paragraph regarding Windsor's relocation to Panama, and also instructs them to amend their Rule 26(a) disclosures and interrogatory responses to reflect Windsor's correct name and legal status.

14

### 2.  Proposed Counterclaim

Defendants also request leave to amend their answer to assert a counterclaim for indemnification against Windsor for legal fees and expenses that have accrued, and continue to accrue, in this lawsuit.  As noted above, the SNMA between Windsor and Citibank, which Windsor signed on July 20, 2007, obligates Windsor to indemnify Defendants

> to the fullest extent permitted by law, from and against any loss, liability, cost, claim, action, demand or expense (including, but not limited to, all reasonable costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) which Citibank, its affiliates or the Issuer may incur or which may be made against them by the client, or any breach of the client's representations, warranties and obligations under this Master Agreement.

(Post Decl. Ex. A at 6).  In their Answer, Defendants asserted an affirmative defense that "Defendants are entitled to be indemnified for all losses, costs, charges, and expenses incurred in this lawsuit" (Answer 18); they now move to add a counterclaim for indemnification because they have "reexamined Windsor's liability and have determined that such liability — which is [a]n ongoing obligation under the SNMA — is appropriate for a counterclaim, in addition to the affirmative defense already pleaded," (Mem. in Supp. Mot. to Amend 5).  Plaintiffs oppose this amendment on grounds of delay and futility.

Plaintiffs first argue that "Defendants have known about the Agreement's contractual indemnification provision since it was signed by Windsor on July 20, 2007," and that "[D]efendants have failed to demonstrate a good-faith basis for their protracted delay in asserting their proposed counterclaim."  (Mem. in Opp'n Mot. to Amend 7-8).  Yet, as noted above, delay alone is an insufficient basis on which to deny a motion to amend.  *See Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*, No. 12 Civ. 5141 (JMF), 2013 WL 2190071, at *1 (S.D.N.Y. May 21, 2013).  Further, Plaintiffs identify no prejudice that they will suffer if the Court permits this amendment.  Discovery will not be complete for an additional four months, and the proposed

15

counterclaim does not appear to expand the scope of that discovery because the factual predicate of the counterclaim was already incorporated into Defendants' affirmative defense.

Plaintiffs also contend that the proposed counterclaim is futile, as the SNMA's indemnification clause "contains no language which could be construed to show an intent to create an all-encompassing indemnification." (Mem. in Opp'n Mot. to Amend 10). Although indemnity provisions must be strictly construed, when determining whether an indemnity provision covers the conduct at issue courts are required to consider "the language and purpose of the entire agreement and *the surrounding facts and circumstances*." *In re Refco Secs. Litig.*, 890 F. Supp. 2d 332, 341 (S.D.N.Y. 2012) (emphasis added). Here, the record is insufficiently developed for the Court to resolve the indemnification issue at this juncture and, as such, leave to amend is granted. *See Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 143 (E.D.N.Y. 2010).

Additionally, as the parties all but agree (*see* Mem. in Opp'n Mot. to Amend 7-8; Reply Mem. in Supp. Mot. to Amend 4 n.4), Defendants' counterclaim is compulsory, as it "arises out of the transaction or occurrence that is the subject matter of the opposing part[ies'] claim." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (quoting Fed. R. Civ. P. 13(a)). That too counsels in favor of granting Defendants leave to amend. *See Pfeffer v. Mark*, 98-cv-6771 (ILG), 2000 WL 516891, at *2 (E.D.N.Y. Mar. 16. 2000) (explaining that because compulsory counterclaims "would not be assertable in a subsequent case were they omitted here . . . the argument for allowing amendment here is especially compelling" (internal quotation marks omitted)); Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1430 (3d ed. 2013) ("When the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in

subsequent cases (at least in the federal courts) and the pleader will lose the opportunity to have the claim adjudicated.").

For these reasons, Defendants' motion for leave to amend their Answer is granted.

## CONCLUSION

For the reasons stated above, Defendants' motions for sanctions and security for costs (Docket No. 51) is GRANTED IN PART, and Defendants' motion to amend the answer (Docket No. 60) is GRANTED.

No later than **August 23, 2013**, the parties are each to file a brief, not to exceed eight pages, addressing whether more severe sanctions should be imposed on Windsor, including dismissal from the case, in light of its ongoing failure to meet its discovery obligations.

No later than **August 23, 2013**, Plaintiffs are also to file an amended complaint to correct the caption and to add a paragraph regarding Windsor's relocation to Panama.  By the same date, they are directed to amend their Rule 26(a) disclosures and interrogatory responses to reflect Windsor's correct name and legal status.  Plaintiffs are to make no additional changes to the Complaint, their Rule 26(a) disclosures, and their interrogatory responses.

No later than **August 30, 2013**, Defendants are to file an answer to Plaintiff's amended complaint to add their proposed affirmative defense and counterclaim and to respond to any changes made in Plaintiffs' amended complaint.  Defendants are to make no additional changes to their answer.

The parties are directed to confer regarding Defendants' specific costs and fees that are attributable to Plaintiffs' failure to meet their discovery obligations.  No later than **September 4, 2013**, Defendants are to file a submission setting forth the costs and fees it believes it is owed, including contemporaneous time records, as well as a memorandum of law, not to exceed five

pages, addressing the appropriate size of the security bond that Windsor should be required to post.  Plaintiffs shall file any opposition no later than **September 11, 2013**.

The Clerk of the Court is directed to terminate Docket Numbers 51 and 60.

SO ORDERED.

Dated: August 16, 2013
　　　　New York, New York

JESSE M. FURMAN
United States District Judge