UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: *02/07/2014*

BERNARDO VALENTINI et al.,                          :
                                                    :
                              Plaintiffs,           :
                                                    :
              -v-                                   :
                                                    :
CITIGROUP, INC. et al.,                             :
                                                    :
                              Defendants.           :
                                                    :
------------------------------------------------------------------X

11 Civ. 1355 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

On August 16, 2013, this Court imposed monetary sanctions on Plaintiffs for several

failures to comply with discovery obligations and orders of the Court.  (Docket No. 71).  After

supplemental briefing, the Court set these sanctions at an amount totaling $191,225.06.  (Docket

Nos. 98, 106).  The Court also ordered Plaintiffs to post a $750,000 bond pursuant to Local Rule

54.2 (Docket No. 98), owing to an agreement under which one of the Plaintiffs, Windsor

International Business Corporation, was required to indemnify Defendants from "any 'loss,

liability, cost, claim, action, demand or expense . . . which [Defendants] may incur' in this

action, including costs and fees."  (Docket No. 71, at 9-11).

On November 7, 2013, the Court learned from Defendants that Plaintiffs had taken the

position that they would not pay the monetary sanctions because they "d[id] not have the ability

to pay [them]."  (Docket No. 117, Ex. 1).  Plaintiffs also had not yet posted the $750,000 bond.

(Docket Nos. 112, 114).  After receiving a supplemental submission from Plaintiffs (Docket No.

124), the Court held a hearing on November 25, 2013 and dismissed Plaintiffs' lawsuit (Docket

Nos. 125, 126), concluding that Plaintiffs had "basically conceded an ability to pay but an

unwillingness to pay" the sanctions (Transcript of November 25, 2013 Proceeding ("Tr.")

(Docket No. 126) 10:13-15).

On December 20, 2013, Plaintiffs appealed the order of dismissal.  (Docket No. 130).

Presently before the Court is Defendants' motion, pursuant to Rule 7 of the Federal Rules of

Appellate Procedure, to compel Plaintiffs to post an appeal bond.  (Docket No. 132).

## DISCUSSION

### A.  Imposition of the Bond

Rule 7 of the Federal Rules of Appellate Procedure provides that, "[i]n a civil case, the

district court may require an appellant to file a bond or provide other security in any form and

amount necessary to ensure payment of costs on appeal."  Fed. R. App. P. 7.  In deciding a Rule

7 motion, courts consider "(1) the appellant's financial ability to post a bond, (2) the risk that the

appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4)

whether the appellant has shown any bad faith or vexatious conduct."  *DeCurtis v. Upward

Bound Int'l, Inc.*, No. 09 Civ. 5378 (RJS), 2013 WL 3270357, at *2 (S.D.N.Y. June 3, 2013)

(internal quotation marks omitted).

Here, all four factors support the imposition of a bond.  First, Plaintiffs' assertions that

they are unable to post the bond are belied by the record.  Notably, Plaintiffs themselves opposed

imposition of the Rule 54.2 bond in the first instance on the ground that Valentini's "financial

condition is not at issue."  (Docket No. 57, at 14).  Moreover, the record indicates that, as of

December 31, 2012, Plaintiff Valentini owned assets worth more than 55 million Brazilian Reals,

or approximately $23 million.  (Docket No. 128)  In addition, Plaintiffs have previously

represented to the Court that Plaintiff Valentini owns a house and at least part of a holding

company known as B. Valentini e Cia.  (Docket No. 117; Tr. 2:23-4:21).[1]  *See, e.g.*, *DeCurtis*,

---

[1]      Plaintiffs have never argued — and do not argue here — that Windsor's ability to pay

2013 WL 3270357, at *2 ("'[U]nsubstantiated' assertions that an appellant is unable to post a bond will not weigh against appellee's motion."); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (presuming that objectors possessed the ability to post a bond where they had not "presented any evidence demonstrating that they lack[ed] the financial ability" to do so).  As the Court concluded at the November 25, 2013 conference, Valentini (and, by extension, Windsor) are able to post a bond; they are merely unwilling to do so.

Second, the risk of nonpayment, which has been characterized as "perhaps the most important" factor, *In re Ambac Fin. Grp., Inc. Sec. Litig.*, No. 08 Civ. 411 (NRB), 2012 WL 260231, at *2 (S.D.N.Y. Jan. 12, 2012), is high.  Not only have Plaintiffs failed to pay the $191,225.06 of monetary sanctions or post the $750,000 bond, they are also foreign parties with no assets in the United States.  *See, e.g.*, *Ambac*, 2012 WL 260231, at *2 ("[C]ourts have required appeal bonds in instances in which the appellant is a foreign party with no assets in the United States."); *Baker v. Urban Outfitters, Inc.*, No. 01 Civ. 5440 (LAP), 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (finding a high risk of nonpayment where appellants had not complied with previous Court orders to pay appellee's costs).  Plaintiffs have also "openly assert[ed]" that they "have no intention of paying" the appeal bond, *DeCurtis*, 2013 WL 3270357, at *4, stating that "Defendants know full well that Plaintiffs cannot satisfy even the underlying judgment here, much less additional costs such as . . . appeal bonds."  (Mem. of Law. Opp'n to Defs.' Mot. for Bond ("Pls.' Mem.") (Docket No. 137) 3).[2]

---

should be determined separately from Valentini's.  To the contrary, as noted above, in opposing Defendants' motion to require *Windsor* to post a Rule 54.2 bond, Plaintiffs invoked *Valentini's* financial condition as a basis to deny the motion.  (Docket No. 57, at 14).  That is, Plaintiffs do not dispute that if Valentini is able to post a bond, then Windsor is also able to post a bond.

[2]      To the extent that this statement suggests an inability to post a bond, the Court finds it incredible for the reasons stated above.  Again, Plaintiffs are able to post a bond — either by

Third, in the Court's judgment, Plaintiffs' appeal is without merit.  Significantly, the "factors" that Plaintiffs contend "should militate in favor of a more charitable view . . . of the pending appeal" (Pls.' Mem. 3) misrepresent the record.  Plaintiffs' suit was not, as Plaintiffs claim, dismissed with "little or no attempt to impose lesser sanctions."  (*Id.* at 4).  Instead, the Court rejected Defendants' initial request to either dismiss the Complaint or issue adverse findings against Plaintiffs (which would have been tantamount to entering judgment in Defendants' favor), and only imposed monetary sanctions (Docket No. 98 ¶ 10) — perhaps the "mildest" sanction available.  *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).  It was only after Plaintiffs failed to pay these sanctions that the Court dismissed the suit, and the Court had expressly warned Plaintiffs of that possibility beforehand.  (Docket No. 98 ¶ 10).  *See also Kelly v. EMI Blackwood Music Inc.*, No. 07 Civ. 2123 (JSR) (AJP), 2007 WL 2327059, at *2 (S.D.N.Y. Aug. 16, 2007) ("Monetary sanctions would be meaningless, since [Plaintiff] has refused to pay the prior sanction, and thus dismissal is the appropriate sanction."), *aff'd*, 2007 WL 2766660 (S.D.N.Y. Sept. 21, 2007); *cf. Peker v. Fader*, 965 F. Supp. 454, 458 (S.D.N.Y. 1997) (holding that, where a contemnor had previously refused to pay fines and imprisonment was inappropriate, dismissal was "the most appropriate contempt sanction").  Notably, when asked — not once, but twice — at the November 25th conference if they could cite any authority for the proposition that dismissal was not warranted under the circumstances, Plaintiffs failed to do so.  (Tr. 5:20-25, 9:5-18).

Further, the Court did, in fact, undertake a "conscientious and detailed inquiry into the validity of Defendants' . . . fee applications," (Pls.' Mem. 4-5), as it discounted Defendants' initial request for fees and costs by ten percent (Docket No. 98 ¶ 1).  And, as noted, at the

---

liquidating assets or obtaining financing (using their assets as collateral or otherwise).  The fact that they do not *want* to do so does not amount to an *inability* to post a bond.

November 25th conference, Plaintiffs essentially conceded that they *did* have the ability to pay the sanctions by liquidating Plaintiff Valentini's holdings, but simply chose not to do so.  (Tr. 4:10-5:20; 10:13-15).  *Cf. DeCurtis*, 2013 WL 3270357, at *3 (concluding that appellant who owned a house, but argued that it could not be liquidated because it was owned as a tenancy by the entirety, possessed the financial ability to post a bond).  Fourth, although a finding of bad faith is not required for the imposition of a Rule 7 bond, *see Tri-Star Pictures, Inc. v. Unger*, 198 F.3d 235, 1999 WL 973506, at *2 (2d Cir. 1999), Plaintiffs' pattern of violating Court Orders (*see* Docket No. 71, at 3-5) suggests bad faith here.  Accordingly, a Rule 7 bond is warranted.

## B.  Amount of the Bond

Having determined Plaintiffs must post a bond, the Court must now set its amount.  Rule 7 grants the Court broad discretion in this task, permitting a bond "in any . . . amount necessary to ensure payment of costs on appeal."  Fed. R. App. P. 7.

The principal dispute regarding the amount of the bond concerns whether "costs" includes the attorney's fees that Plaintiffs would be obligated to pay Defendants under their indemnification agreement if Defendants prevail on appeal.  (*Compare* Mem. of Law Supp. Defs.' Mot. to Compel ("Defs.' Mem.") (Docket No. 133) 8-9, *and* Reply Mem. of Law in Further Supp. of Defs.' Mot. ("Defs.' Reply Mem.") (Docket No. 138) 3-5, *with* Pls.' Mem. 6).  In *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998), the Second Circuit held that a Rule 7 bond may include attorney's fees that a prevailing party could recover under Section 505 of the Copyright Act, 17 U.S.C. § 505.  District courts have applied this reasoning to other statutes that provide for attorney's fees.  *See, e.g.*, *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (Clayton Act); *Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 150 (S.D.N.Y. 1999) (Lanham Act).  Plaintiffs contend, however, that the source of such attorney's

fees must be a statute, as opposed to a private contractual agreement.  (Pls.' Mem. 6).  Notably, they do not dispute that, under the indemnification clause in this case, they would be obligated to pay Defendants attorney's fees for the appeal in the event they lose.

Few courts have addressed this issue, and the courts that have addressed it appear to be divided.  *Compare, e.g.*, *Swenson v. Bushman Inv. Props., Ltd.*, No. 10 Civ. 175 (EJL), 2013 WL 6491105, at *1 (D. Idaho Dec. 9, 2013) (requiring the appellant to post a Rule 7 bond that included attorney's fees pursuant to a contractual agreement), *with RFBC One, LLC v. Zeeks, Inc.*, No. 02 Civ. 3231 (DFE), 2005 WL 2140994, at *2 (S.D.N.Y. Sept. 2, 2005) (acknowledging that the defendants' arguments for an appeal bond including attorney's fees had "some equitable force," but declining to include fees because the defendants had not "cite[d] any precedent on this precise point").  Based on *Adsani* and the purposes of a Rule 7 bond, the Court concludes that where, as here, a private contractual agreement would require an appealing party to pay attorney's fees for the appeal, a bond covering likely attorney's fees is appropriate.  The purpose of a Rule 7 bond, after all, is to "protect the appellee from the risk of nonpayment by the appellant," *Berry v. Deutsche Bank Trust Co. Ams.*, 632 F. Supp. 2d 300, 307 (S.D.N.Y. 2009), and the Court can divine no principled distinction between entitlement to costs by statute and entitlement to costs by private agreement for this purpose.  Indeed, *Marek v. Chesny*, 473 U.S. 1 (1985), a case upon which *Adsani* relied heavily, interpreted the meaning of "costs" under Rule 68 of the Federal Rules of Civil Procedure — which, like Appellate Rule 7, leaves the term undefined — as including "all costs properly awardable under the relevant substantive statute *or other authority*."  473 U.S. at 9 (emphasis added); *see Adsani*, 139 F.3d at 72-73.

Accordingly, the Court concludes that attorney's fees are properly awardable, and that the bond in this case should include them.  To calculate attorney's fees, the Court must determine "a

reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "Because the appeal has not yet concluded, the Court must estimate the reasonable number of hours required by the case." *DeCurtis*, 2013 WL 3270357, at *6. In this case, the Court has already approved of attorney's fees to set the monetary sanctions, so it will draw on its previous Orders in setting the reasonable hourly rate here. Specifically, the Court previously awarded a total of $191,225.06 in fees (Docket Nos. 98, 106) for 437.9 hours of work (Docket Nos. 86, 100); accordingly, the Court will use that same hourly rate, $436.69, to calculate the amount of the appeal bond.

Defendants have not, however, provided any estimate of the number of hours they expect to spend on the appeal, and their suggested bond amount of $200,000 implies that they would spend more than 450 hours on the appeal. The Court does not find that figure credible, particularly in light of Defendants' representation that the previous 437.9 hours were spent "addressing Plaintiffs' discovery deficiencies over the course of approximately seven months." (Defs.' Mem. 8-9). Instead, the Court will adopt the same number of hours that the *DeCurtis* Court concluded was reasonable to spend on an appeal: 100. *See* 2013 WL 3270357, at *6. Applying the hourly rate of $436.69, this yields a total of $43,669 in attorney's fees. Defendants also request the taxable costs enumerated in Federal Rule of Appellate Procedure 39(e), including printing, photocopying, and transcript fees, but do not provide an estimate of these costs either. (Defs.' Mem. 9). The Court therefore adopts the amount of such costs approved by the *DeCurtis* court — namely, $500. *See DeCurtis*, 2013 WL 3270357, at *7. In total, then, the appeal bond shall be in the amount of $44,169.

## CONCLUSION

For the reasons stated above, Defendants' motion to compel the posting of a bond is

GRANTED.  Plaintiffs shall, within **thirty days** of the date of this Order, post a bond in the

amount of $44,169.  The Clerk of Court is directed to terminate Docket No. 132.

    SO ORDERED.

Dated: February 7, 2014
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

8